UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

BARBARA REBECCA EINSET, aka BARBARA
REBECCA BELL,

Case No. DK 05-15663
Hon. Scott W. Dales
Chapter 7

        Debtor.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN CONTESTED MATTER**

PRESENT:    HONORABLE SCOTT W. DALES
              United States Bankruptcy Judge

I. <u>INTRODUCTION AND JURISDICTION</u>

Phillip R. Hercik, Jr. ("Mr. Hercik") and the Debtor Barbara Rebecca Einset ("Debtor") jointly owned an 82.5-acre parcel of real estate at the end of Bailey Road, in Pipestone Township, Berrien County, Michigan (the "Property"). During the pendency of the Debtor's case, Mr. Hercik made five mortgage payments on a loan secured by the Property, and performed work on the Property. On May 7, 2009, he filed an Application for Compensation and Administrative Expenses ("Administrative Claim," DN 72), itemizing $16,224.67 in expenses for which he seeks recovery under 11 U.S.C. § 503(b). Chapter 7 Trustee Stephen Langeland ("Trustee") opposes the Administrative Claim. After permitting the parties to conduct discovery over several months, the court held a bench trial on November 16, 2009 in Kalamazoo, Michigan.

The court has jurisdiction over the Debtor's Chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334(a), and the proceeding to consider Mr. Hercik's Administrative Claim is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (B).

This opinion constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c).

## II.  LEGAL STANDARDS AND ARGUMENTS

Section 503(b)(1)(A) defines "administrative expenses" to include "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A); see also In re Federated Dept. Stores, Inc., 270 F.3d 994 (6th Cir. 2001); In re Reid, 399 B.R. 470 (Bankr. E.D. Ky. 2008).  To qualify as an actual and necessary expense, the expenditure must benefit the estate as a whole.  In re Jartran, Inc., 886 F.2d 859, 871 (7th Cir.1989).  Mr. Hercik, as the party seeking to recover an administrative expense claim, must therefore prove by a preponderance of the evidence that the work he performed and the mortgage payments he made were "actual" and "necessary" expenses that benefitted and preserved the estate.

## III.  FACTS AND ANALYSIS

Mr. Hercik sought to establish his right to relief by offering four exhibits, admitted into evidence as Exhibits A-D, and by offering his own testimony, and the Debtor's testimony.  In opposition, the Trustee offered his own testimony, and a single exhibit -- a settlement agreement between the Trustee, Mr. Hercik, and Mr. Hercik's Chapter 12 bankruptcy trustee.  The court credits the testimony of each witness.

The Debtor said she met Mr. Hercik in 1995, and they have been together as a couple since 1997. In 1999, she became a co-owner of the Property, which she described as "barren land." She did not use the Property herself, but she testified that Mr. Hercik used it for hunting.

Mr. Hercik testified that he and the Debtor live together with their child. He always considered the Property to be his, and added the Debtor to the deed purely for estate planning purposes, "in case something should happen" to him. Mr. Hercik said the Property consists mainly of two square, forty-acre parcels, and a two and one-half acre "dog leg" parcel adjacent to Little Black Lake. Mr. Hercik considers much of the Property to be registered as "wetlands." Other than a modest pole barn of twenty by twenty-four feet, a gate where the road meets the Property, a primitive dirt drive on the Property, and some dirt foot bridges over marshy places, the Property is unimproved.

In addition to allowing his sons to use the Property for hunting and fishing, Mr. Hercik testified that he was preparing it for organic farming, a process that evidently required the land to lie fallow for several years in order to rid itself of the chemicals used in contemporary farming operations. Even though Mr. Hercik eventually intended to use the Property as a small organic farm, during the relevant times, it was not producing any income, or contrary to the Trustee's argument, any fruit.

The parties agreed that Greenstone Farm Credit Services ACA and Greenstone Farm Credit Services, FLCA (collectively "Greenstone") had a mortgage on the Property to secure Mr. Hercik's debt. Mr. Hercik testified, without contradiction, that he made five mortgage payments, totaling $8,744.57, which he seeks to recover from the Debtor's estate as part of his Administrative Claim. His testimony did not establish, however, what portion of these mortgage

payments was for interest, and what portion, principal. He offered no bank statements or other documentary evidence shedding light on the question.

When the Debtor filed a voluntary Chapter 7 petition with this court on October 7, 2005, her interest in the Property became part of her bankruptcy estate under 11 U.S.C. § 541. Mr. Hercik, though he filed his own bankruptcy cases[1] in this court with the benefit of counsel, evidently did not understand this, or that the Debtor's Trustee had any authority over the Property. Indeed, Mr. Hercik expressed surprise that the Trustee had taken steps to market the Property, which Mr. Hercik regarded as his own.

From the Trustee's testimony, it appears that after reviewing the Debtor's schedules and conducting the first meeting of creditors, the Trustee contacted a Kalamazoo-area realtor, Roxanne Cantu, who in turn contacted a local realtor, Cressy & Everrett Real Estate, to perform a market analysis in preparation for selling the Property. Although the Trustee initially sought to retain the realtors in early 2006, he withdrew the applications after Mr. Hercik objected to the retention, and the Honorable Jeffrey R. Hughes, who was then assigned to the case, suggested that the Trustee ought to resolve the issues with Mr. Hercik under 11 U.S.C. § 363(h) before marketing the Property. Therefore, the Trustee never formally retained, and the court never appointed, Cressy & Everrett as realtor.

Nevertheless, according to Mr. Hercik, in early 2006, Tim Mitchell, a real estate agent with Cressy & Everett, tore down the gate at the end of Bailey Road, and put up "For Sale" signs without Mr. Hercik's knowledge or permission. Mr. Hercik did not understand what authority the realtor or, for that matter, the Trustee, had to sell the Property which, as Mr. Hercik noted several times from the stand, he regarded as his own. Indeed, it appears that the Trustee was also somewhat confused about the effect of Mr. Hercik's co-tenancy on his sale efforts, given that he

---

[1] Case No. 88-03776, Case No. 05-21970, and Case No. 06-06521. See Fed. R. Evid. 201.

began the process of selling the Property before resolving the Section 363(h) issues that Judge Hughes raised when considering the realtor employment applications.

Thereafter, the Trustee commenced an adversary proceeding against Mr. Hercik and his Chapter 12 Trustee, under 11 U.S.C. § 363(h), seeking authority to sell the Debtor's estate's interest in the Property, and the interests of Mr. Hercik or his Chapter 12 estate.  The parties settled that adversary proceeding by entering into the Stipulation for Settlement of Adversary Proceeding, which the Trustee introduced as Exhibit 1.  As set forth in that stipulation, the Trustee agreed that Mr. Hercik could purchase the interest of the Debtor's estate in the Property, for $30,000.00, provided he did so within 18 months.  However, if Mr. Hercik failed to make the payment by February 28, 2009 or if his Chapter 12 bankruptcy case was dismissed at any time before February 28, 2009, the parties agreed that the Trustee would have the authority to sell all interests in the Property, and split the net sale proceeds.  In fact, Mr. Hercik's Chapter 12 case was dismissed prior to February 28, 2009,[2] and the court authorized the Trustee to sell the Property to a third party for $175,000.00 earlier this year.  Mr. Hercik has filed an appeal from the court's sale order.

There is no dispute that Mr. Hercik actually made the mortgage payments, or that he actually performed the tasks enumerated on Exhibit A by installing and maintaining gates and drainage ditches, moving a road on the Property, and building three dirt bridges.  Rather, the Trustee contends that these were not expenses necessary to preserve the Property.  The court will consider each item in order.

The court agrees with the Trustee that Mr. Hercik did not meet his burden of proving that the mortgage payments benefitted the estate.  He failed in this regard because he could not quantify what portion of the payments was allocable to interest, and what portion, to principal.

---

[2] Mr. Hercik's Chapter 12 bankruptcy case was dismissed on October 22, 2008.

Moreover, the only mortgage introduced into evidence, Exhibit D, bears the Trustee's signature evidently as an accommodation to Mr. Hercik. The mortgage secured $83,180.00 in debt from Mr. Hercik to Greenstone under two earlier notes. It is clear from the document itself that the Trustee had "no obligations to pay or perform this Mortgage," and did not encumber the Debtor's estate's interest in the Property. See Exhibit D at p. 3, ¶ 22. It is conceivable that another mortgage encumbered the Debtor's estate's interest, but Mr. Hercik did not offer it into evidence. The court will not presume that making the five mortgage payments forestalled foreclosure, because it is equally plausible to infer that Greenstone might have preferred to await the faster and perhaps richer recovery that a bankruptcy sale promised, as opposed to the fire-sale pricing and delays that typify foreclosure. Under the circumstances, the court cannot find that the $8,744.57 in mortgage payments benefited the Debtor's bankruptcy estate.

With respect to the two gates, which Mr. Hercik valued at $800.00, the court credits the testimony that the gates benefited the Property and the Debtor's bankruptcy estate by keeping trespassers out. Indeed, from Mr. Hercik's testimony about the marshy nature of the Property, and the fact that trespassers had made the existing road impassible because of the mud, the court infers a benefit from the gates. The second gate, moreover, prevented cars from reaching the pole barn without permission, which naturally protected that structure.

As for the work related to digging drainage ditches, building dirt bridges, and moving the road seventy feet to the east, the court also finds a benefit to the Property by making the Property, and Little Black Lake, accessible to automobiles or farm equipment. Clearing scrub brush from the Property and otherwise preventing vegetation from taking-over the land also preserved value in Mr. Hercik's opinion, an opinion the court shares.

In response to Mr. Hercik's argument concerning the value of these additions, the Trustee contends that the estate received an offer to purchase the Property in 2006 for $175,000.00, and despite Mr. Hercik's improvements, the Trustee sold the property to a different buyer in 2009 for the same price. Therefore, there was no benefit according to the Trustee. The Trustee's argument, however, is premised on the fact that the Property was gated in 2006 before the damage that Mr. Hercik described in his testimony. It is reasonable to infer, as the court does, that Mr. Hercik's efforts in restoring the gate, repairing the washed-out road, improving drainage, and building dirt bridges, restored the Property to its 2006 pre-damage value. Although an unaccepted offer to purchase the Property is not much evidence of value, it is more persuasive than a hearsay report of Greenstone's higher pre-bankruptcy, appraisal. The court infers from the identical values of the Property in 2006 and 2009, and from the credible report of the damage that Mr. Hercik repaired during that same period, that his efforts preserved value by restoring and improving the Property. In other words, it is plausible to assume that if Mr. Hercik had not taken the steps he took, the Property would have fetched a lower price in 2009 than in fact it did.

Mr. Hercik supported his calculation of the value of his improvements by stating, credibly, that he charges $100.00 per hour for such work, "time and materials." The Trustee offered nothing in opposition to this testimony. The court finds the expenses Mr. Hercik incurred in the amount of $7,500.10 were actual and necessary to preserve the Property. The court also finds, however, that Mr. Hercik, as the co-tenant, must bear one-half of this expense, or $3,750.05.

The Trustee opposes the Administrative Claim on several other grounds. <u>See</u> Trustee's Memorandum of Law ("Trustee's Brief," DN 85). First, the Trustee says that the fair market

value of rent that he could have charged Mr. Hercik exceeded the Administrative Claim, and therefore defeats it. The court rejects this argument because the Trustee offered no evidence of rental values to support it, and he provided no authority that one tenant-in-common may charge and recover rent from another tenant-in-common. The argument is simply inconsistent with the nature of the tenancy, at least where one tenant does not seek to exclude the other's enjoyment. Merritt v. Nickelson, 80 Mich. App. 663, 264 N.W.2d 89 (1978), aff'd, 407 Mich. 544, 287 N.W.2d 178 (1980) (each tenant enjoys equal right of possession); see generally John G. Cameron, Michigan Real Property Law § 9.7 (3d ed. 2005) (hereinafter "Cameron") ("an occupying tenant in common is not liable to others for rent in the absence of an agreement to the contrary").

Second, the Trustee contends that he did not authorize any of the improvements. He also cites no authority for this argument, other than 11 U.S.C. § 503(c)(3), saying that the components of this Administrative Claim are "similar to expenses incurred by a manager of the Debtor after the commencement of the case." See Trustee Brief at 4. Further, the Trustee makes the more general yet similar argument that if the Administrative Claim were allowed, then "anyone at any time could deal with property of the estate, without the knowledge or consent of a Chapter 7 Trustee, for the sole purpose of diverting virtually all of the net sale proceeds of the assets of the estate for his or her own benefit." The court rejects the argument as hyperbole because it ignores the textual limitation in 11 U.S.C. §503(b) -- satisfied here -- that the claimant must prove the expense was actual and necessary to preserve the estate. Moreover, Mr. Hercik is the estate's co-tenant, not a stranger to the Property. Allowing him to recover for improvements is consistent with applicable state law in partition proceedings,[3] which recognizes that, as long as the co-

---

[3] It is not unfair or outlandish to treat the Administrative Claim as closely related to the Trustee's sale under 11 U.S.C. § 363(h) -- the Bankruptcy Code section authorizing partition of the Property.

tenant is willing to share rents and profits from the land, he may recover his share of the cost of the improvements.  <u>See</u> Cameron § 9.7.[4]  Mr. Hercik's relationship to the Property also distinguishes the case from <u>In re Reid</u>, 399 B.R. 470 (Bankr. E.D. Ky. 2008).  So limited, the court's decision will not open the floodgates to administrative claims of officious intermeddlers.

Last, the Trustee argues that Mr. Hercik sold fruit from the Property and used the profits. Presumably the Trustee was making another set-off argument, similar to the argument regarding foregone rent.  The evidence, however, including testimony the Trustee's counsel elicited on cross-examination, established that Mr. Hercik was not farming the Property, and that the Property was not producing income.

Having considered the testimony and other evidence, and having rejected many of the Trustee's arguments, the court will allow Mr. Hercik's Administrative Claim in the amount of $3,750.05, and disallow it to the extent of $12,494.62.

## IV.  <u>CONCLUSION</u>

Because the court finds, by a preponderance of the evidence, that Mr. Hercik's efforts benefited the Property, and were actual and necessary costs of preserving the estate, the court will enter a judgment allowing the Administrative Claim in the amount of $3,750.05.

---

[4] As noted below, there were no rents, and the court's equal division of the Property's sale proceeds between Mr. Hercik and the Chapter 7 estate ensures that the former is sharing the profits with the latter.

**IT IS SO ORDERED.**          _____
Scott W. Dales
United States Bankruptcy Judge

**Dated: November 19, 2009**